LOUIS A. WEINER *vs.* SALEM FIVE CENTS SAVINGS BANK & others.[1] February 11, 1977. The plaintiff, assignee of a general partner of High-Gate Shopping Center, a Massachusetts limited partnership, commenced an action against several Massachusetts savings banks, defendants, to recover $54,000 claimed to have been exacted illegally by the defendants from the assignor (developer). The material allegations of the declaration were as follows. Under a letter agreement dated October 2, 1972, the defendants committed themselves to lend the developer $3,600,000 for ten years, with interest at eight and one-half per cent per annum, the loan to be secured by a first mortgage on a shopping center. The banks' commitment to make the loan was to extend until February 1, 1974, and was stated to be conditioned, among other things, on completion of the construction of the shopping center. As

---

[1] Arlington Five Cents Savings Bank, Worcester County Institution for Savings, City Savings Bank of Pittsfield, and Wakefield Savings Bank. A sixth participating bank, Merchants-Warren National Bank, was dismissed as a defendant by stipulation.

the stated consideration for the banks' commitment, the developer paid in $54,000, of which $36,000 was to be returned when the loan was made, and $18,000 was to be retained by the banks as their compensation for the commitment; if for any reason other than the tender of a title unacceptable to the banks, the loan did not close, the $36,000 would also be retained. Presumably because construction of the shopping center was delayed, a superseding letter agreement of May 18, 1973, extended the banks' commitment to June 30, 1974, with an increase of the principal amount of the loan to $4,000,000, and of the interest charge to eight and three-quarters per cent. As the stated consideration for the banks' revised commitment, the developer agreed to waive all rights to the $54,000 held by the banks. In fact, without fault on the part of the banks, the loan was not made. A judge of the Superior Court held that the foregoing did not state a claim for the return of the $54,000, and accordingly dismissed the action and entered judgment for the defendants, from which the present appeal is taken. We agree that there was no illegality in the transaction described; it appears to be typical financing by which a "permanent" mortgage loan was to replace a loan by another lender covering construction costs. The defendants as savings banks were empowered to enter into agreements committing themselves to make the loans, see G. L. c. 168, § 34 (first mortgage loans), § 35, par. 8 (participation loans), and § 2 (general powers), and this quite naturally comprehended authority to require a borrower to give consideration for the banks' exposure that might be involved. General Laws c. 168, § 20, as appearing in St. 1955, c. 432, § 1 (reproduced in part in the margin[2]), prohibits a savings bank from taking or receiving a fee or commission for a loan made by it except as disclosed on the face of the contract. Here the fee or commission (if it can be so called) was disclosed, so § 20 was satisfied even if it is taken to apply to executory or contingent loans such as those embodied in the letter agreements as well as to "loan[s] made." It is thus unnecessary to analyze whether the case falls within the clause "charges by such corporation for any services which by law it is authorized to render."

*Judgment affirmed.*

*Alan L. Lewis* for the plaintiff.
*David W. Walker* for the defendants.

---

[2] "Such corporation [savings bank] shall not negotiate, take or receive a fee, brokerage, commission, gift or other consideration, for or on account of a loan made by or on behalf of such corporation, other than appears on the face of the note or contract by which such loan purports to be or is made; but this section shall not prohibit a reasonable charge for services in the examination of property and titles and for the preparation and recording of conveyances and other instruments pertaining to its loans, nor charges by such corporation for any services which by law it is authorized to render, nor premiums or charges in connection with its construction loans or the sale or purchase, or commitments therefor, of real estate mortgages for its own account."